JOURNAL ENTRY and OPINION
{¶ 1} Appellant Kristopher Courtney appeals the trial court's denial of his motion to suppress. On appeal he assigns the following error for our review:
"I. The court erred when it denied defendant's motion tosuppress."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On June 9, 2004, the Cuyahoga County Grand Jury indicted Courtney for one count of carrying a concealed weapon and for one count of having a weapon while under a disability. At his arraignment, Courtney pled not guilty to the indictment and subsequently filed a motion to suppress, which the trial court denied.
 COURT'S FINDINGS {¶ 4} After receiving testimony at the suppression hearing, the trial court made the following findings:
THE COURT: Well, let me say that, to me, there's no stop here.
There was no traffic stop. The defendant was already stopped. The officer didn't come up to him to issue him a citation. The officer came up to him because he couldn't figure out why at 2:30 in the morning this automobile was stopped in the middle of an intersection blocking traffic which would move out at Farnsleigh.
And he's thinking, at 2:30 in the morning with some car stopped there whether — and, frankly, I'm much more inclined to believe the officer. It may be the that [sic] the defendant thinks he saw this police car. But it's also more likely to me that, exactly as the officer said, he had just been coming from something at Warrensville Center and he's on his way down here.
But whether the officer is right about what happened or the defendant is right that the officer was already stopped there, this business of having this car stopped in the middle of this intersection at 2:30 in the morning, I'd be wondering, "What's with this guy? Is he passed out? Is he drunk?" Because it makes no sense to me.
THE COURT: So this isn't a traffic stop to cite somebody for something. This is an officer trying to figure out, "Why is this guy stopped there like this?" And then this guy gives this explanation, which is a completely batty explanation that he was making a left-hand turn onto Lomond — I mean, onto Chagrin, and he thought he had to stop. To me, if I was him, I'd say there's something impaired about this man's judgment.
And it would cause me to think even more that he's under the influence. And he smells a little bit of marijuana. I think this is a whole issue, Mr. Willis, of the officer not stopping him at all, but finding somebody in a strange position on a street and wondering whether this guy is impaired in some way.
And as this thing evolves the evidence begins to emerge here that there is a likelihood of marijuana. But then when the defendant does exercise his rights — and there's nothing wrong with that — of saying, `I don't want to let you search the car," there's also nothing wrong with the officer to be suspicious when he wouldn't let him search the car.
I don't see anything wrong with the officer being suspicious when he says that. And I believe the defendant probably said, "You can't search my car," or at least communicated — made it clear — whether he used those words or not, it was clear that he wouldn't give him consent. But the officer, I don't think, Mr. Willis, has to abandon his concern that there's something wrong with this guy.
And maybe he shouldn't be on the road. And then when he rolls up the window and locks the doors, yeah, I mean, I think that's a very peculiar kind of thing. So I think his actions led — understandably led the police to believe that this guy was impaired, as the officer has testified, and then wanted to search at this point to find out what was going on. So I'm going deny [sic] the motion to suppress.
 {¶ 5} Upon reviewing the record, we conclude that the judge's findings are supported by competent, credible evidence. The State presented two officers, Kerr and Adkins, who testified that Courtney was stopped in the street. Officer Kerr approached him, took his license, insurance; checked each and found no activity. Officer Kerr planned to let Courtney leave, assuming his license and insurance were in good order.
 {¶ 6} Before letting Courtney leave, the officer asked Courtney whether he had any drugs, weapons, or anything illegal. Courtney looked away and responded in the negative. The officer then asked whether he could search the vehicle, and Courtney said "No."
 {¶ 7} Officer Adkins joined Officer Kerr, and Kerr inquired as to whether he smelled marijuana. He said he did. It was at this point that Courtney was ordered out of the car.
 {¶ 8} Courtney testified, and his testimony did not differ from Officer Kerr, except he said Kerr drew his weapon at the moment that Adkins arrived.
 {¶ 9} During the search of the car, the officer found a small bag of marijuana and a loaded revolver.
 MOTION TO SUPPRESS {¶ 10} In his sole assigned error, Courtney argues the trial court erred in denying his motion to suppress. We disagree.
 {¶ 11} An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact. Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[1] Thus, the credibility of witnesses during a suppression hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility.[2] Accordingly, in our review we are bound to accept the trial court's findings of fact whether they are supported by competent, credible evidence.[3]
 {¶ 12} The Fourth and Fourteenth Amendments to the United States Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification.[4] Section 14, Article I of the Ohio Constitution protects the same interests in a manner consistent with the Fourth Amendment to the United States Constitution.[5]
 {¶ 13} In Terry v. Ohio,[6] the United States Supreme Court held that a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.[7] Furthermore, the standard against which the facts are judged must be an objective one: "[W]ould the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?"[8]
 {¶ 14} An objective and particularized suspicion that criminal activity was afoot must be based on the entire picture, a totality of the surrounding circumstances.[9]
Furthermore, these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.[10]
 {¶ 15} In the instant case, our analysis of the totality of the circumstances begins with the officer's observation of the car stopped in the middle of the intersection at 2:30 in the morning. Officer Kerr testified that when he observed the car stopped in the middle of the intersection, his initial thought was that either something was wrong with the car, or that the driver was intoxicated.[11] Upon approaching the stopped vehicle, he could smell the odor of Black and Mild cigar, and believed he smelled marijuana. In addition, he observed that Courtney's eyes were glassy and bloodshot.
 {¶ 16} From the initial observation, Officer Kerr had reason to suspect that Courtney might be intoxicated. When Officer Kerr asked Courtney why he was stopped in middle of the intersection, Courtney explained that he had stopped for the red light. The instant red light was for the motorists traveling eastbound or westbound on Chagrin Boulevard; thus, motorists turning westbound onto Chagrin Boulevard from Lomond are not required to stop. Nevertheless, Officer Kerr made the decision not to issue a citation upon learning whether Courtney's credentials were valid.
 {¶ 17} Upon returning Courtney's valid credentials, Officer Kerr could clearly smell the odor of burned marijuana, because the odor of the Black and Mild cigar had dissipated after the car window had been opened during the incident. In addition, Patrolman Adkins was certain that he too smelled the odor of burned marijuana. Consequently, the plain smell of the burned marijuana motivated Officer Kerr to investigate the matter further, by requesting consent to search Courtney's car. Under the circumstances, Officer Kerr's actions were reasonable.
 {¶ 18} The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause for arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry
recognizes that it may be the essence of good police work to adopt an intermediate response.[12] In this case, the officer requesting permission to search Courtney's car was reasonable because the officer smelled marijuana, observed Courtney's glassy, blood-shot eyes, and observed his vehicle stopped in the street.
 {¶ 19} The Ohio Supreme Court has held "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement."[13] Thus, the search of the vehicle was permitted; the trial court correctly denied the motion to suppress and we overrule Courtney's sole assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr. J., and Rocco, J., Concur.
[1] See State v. Robinson (1994), 98 Ohio App.3d 560; Statev. Rossiter (1993), 88 Ohio App.3d 162; State v. Lewis (1992),78 Ohio App.3d 518; State v. Warren (Aug. 12, 1991), 4th
Dist. No. 90CA7.
[2] See State v. Mills (1992), 62 Ohio St.3d 357; State v.Fanning (1982), 1 Ohio St.3d 19.
[3] See State v. Harris (1994), 98 Ohio App.3d 543.
[4] United States v. Cortez (1981), 449 U.S. 411, 417; Reidv. Georgia (1980), 448 U.S. 438, 440; Terry v. Ohio (1968),392 U.S. 1, 19.
[5] State v. Lindway (1936), 131 Ohio St. 166; State v.Burkholder (1984), 12 Ohio St.3d 205.
[6] (1968), 392 U.S. 1.
[7] Id. at 21.
[8] Id. at 21-22.
[9] State v. Bobo (1988), 37 Ohio St.3d 177; United Statesv. Rickus (C.A. 3, 1984), 737 F.2d 360, 365.
[10] United States v. Hall (C.A.D.C. 1976), 525 F.2d 857,859; State v. Freeman (1980), 64 Ohio St.2d 291, 295.
[11] Tr. at 32.
[12] Adams v. Williams (1972), 407 U.S. 143, 145.
[13] State v. Moore, 90 Ohio St.3d 47, 2000-Ohio-10.