DECISION AND JUDGMENT ENTRY
Ronald J. Smith appeals his convictions for domestic violence, in violation of R.C. 2919.25(A). He asserts that the Hillsboro Municipal Court was biased, conducted voir dire improperly, erred in declaring Anna Smith and Julie Smith hostile witnesses, and improperly questioned Anna, Julie, Jennifer Kincaid, and Sergeant Greg Barr. Additionally, Smith contends that the trial court erred by allowing the State to impeach its own witnesses with prior inconsistent statements, by admitting these statements into evidence, and by finding that statements made by Anna to Sergeant Barr and statements made by Julie to Kincaid were excited utterances. Finally, Smith contends that his counsel was ineffective. Because we find no merit in any of Smith's nine assignments of error, we overrule each of them. Accordingly, we affirm the judgment of the trial court.
 I.
On March 19, 2001, police officer Steven Browder filed two complaints alleging that Smith violated R.C. 2919.25(A), domestic violence. Browder swore that Smith's wife, Anna, and Smith's daughter, Julie, told him the following version of events. After an argument between Smith and Anna, Smith hit Julie on the left side of her face, struck her several times in the upper body, and pulled her hair. Julie then left her house, but stopped when her father, Smith, told her to stop; Smith then ran to her and shoved her to the ground. Julie went to a near-by carryout to call the police. Smith then struck Anna in the head several times, causing her to become dizzy and fall to the ground.
A visiting judge was assigned to this case and presided over a jury trial. The jury found Smith guilty on both charges.
The trial court sentenced Smith to six months on each count, to be served consecutively. The trial court then suspended all but two days jail in each case on several conditions, including three years of supervised probation.
Smith appeals and asserts the following assignments of error:
 I. The court committed error during voir dire when it excused panel members from the courtroom and questioned one perspective juror who knew the defendant. The court did not do this with a prior prospective juror who knew the prosecuting witness.
 II. The court committed error when in the presence of the jury it declared a witness called by the State, Anna Smith, the wife of the defendant, to be a hostile witness and permitted the State to cross examine this witness. The court also committed error in examining the witness in the presence of the jury.
 III. The court committed error when it permitted the State to cross examine its witness, Julie Smith, daughter of the defendant, and further erred in questioning said witness in the presence of the jury.
 IV. The court committed error when it examined two witnesses called by the State in such a manner as to become an advocate.
 V. The trial court committed error when it permitted the State to cross examine two witnesses concerning prior written statements made by them when the State was aware that these statements had been recanted.
 VI. The court committed error when it admitted into evidence written statements by two witnesses when it was aware that said statements had been recanted and when said witnesses admitted signing the statements.
 VII. The court committed error when it interrupted the questioning of the defendant and made statements to the defendant in the presence of the jury which could appear to question the honesty of the defendant.
 VIII. The court committed error on two occasions in its instructions to the jury when it advised the jury that officers of the court and court personnel had a duty to proceed with the prosecution when they have a reasonable cause to believe that a crime has been committed.
 IX. Defendant's counsel was ineffective in that he did not raise objections to occurrences during the trial that form the basis for several assignments of error contained in this appeal.
 II.
In his first assignment of error, Smith argues that the trial court erred during voir dire by excusing potential jurors from the courtroom when it questioned a prospective jury member who knew the defendant, because the trial court did not do so with a prospective juror who knew a police officer who would be a witness for the State.
When introducing the parties to the potential jurors, the trial court asked if any of the potential jurors knew them. A potential juror knew Officer Browder. The potential juror stated that he went to school with Browder twelve years before. The potential juror denied any current relationship with Browder and denied that his past relationship with Browder would affect his judgment of Browder's credibility. The trial court had this exchange with the potential juror in front of the remaining potential jurors.
When the trial court introduced Smith, prospective juror Lisa Miley indicated that she knew Smith. Once she explained how she knew Smith, the trial court asked the remaining prospective jurors to exit the courtroom while it questioned Miley. Miley's explanation, as well as many of her answers during voir dire, was transcribed as "inaudible." The trial court eventually excused Miley for cause. At no time did Smith or his attorney object to the trial court's procedure during its questioning of the prospective jurors who knew Browder or its questioning of Miley.
The failure to promptly object and call any error to the attention of the trial court, at a time when it could have been prevented or corrected, amounts to a waiver of all but plain error. State v. Lott
(1990), 51 Ohio St.3d 160, 174, citing State v. Gordon (1971),28 Ohio St.2d 45, at paragraph two of the syllabus. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990), 53 Ohio St.3d 107, 111. The plain error rule should not be invoked unless, but for the error, the outcome of the trial would clearly have been otherwise. See State v. Underwood
(1983), 3 Ohio St.3d 12.
"[D]etermination of issues raised in voir dire in criminal cases is within the discretion of the trial judge." State v. Davie (1997),80 Ohio St.3d 311, 316, citing State v. Beuke (1988), 38 Ohio St.3d 29,39.
Here, we cannot find that the trial court's conduct during voir dire amounts to plain error. The trial court excused the remaining prospective jurors once it determined that Miley had a present knowledge of Smith. Without the benefit of Miley's answer,[2] we do not know what prompted the trial court to excuse the remaining prospective jurors from the room. Given that the trial court excused Miley once she expressed that she could not be fair or impartial in the case, we do not see how Smith was prejudiced in any way. Accordingly, we find that the trial court did not commit plain error in conducting voir dire and overrule Smith's first assignment of error.
 III.
We combine our discussion of Smith's second and third assignments of error, and part of Smith's fourth assignment of error because they concern the same legal issues. In these assignments of error, Smith argues that the trial court erred (1) by declaring two witnesses to be hostile witnesses, and (2) by questioning several witnesses in the presence of the jury.
 A.
We first address Smith's arguments that the trial court erred in finding that Anna was a hostile witness and in overruling his objections to the State treating Julie Smith as a hostile witness. We begin by noting that Smith failed to object to the trial court's finding that Anna was a hostile witness. Therefore, he has waived all but plain error.Lott, 51 Ohio St.3d at 174.
A trial court's decision on whether to declare a witness hostile is a matter within its sound discretion. Ramage v. Central Ohio EmergencyServices, Inc. (1992) 64 Ohio St.3d 97, 111; State v. Minneker (1971),27 Ohio St.2d 155, 158. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. State v. Lessin
(1993), 67 Ohio St.3d 487; Rock v. Cabral (1993), 67 Ohio St.3d 108. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re JaneDoe I (1991), 57 Ohio St.3d 135, citing Berk v. Matthews (1990),53 Ohio St.3d 161.
Evid.R. 611 provides:
 (C) Leading questions should not be used on direct examination of a witness except as may be necessary to develop [the witness'] testimony. * * * When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.
A trial court does not abuse its discretion in finding that a wife-victim of domestic abuse who denies her initial statements to police that the husband-defendant inflicted physical harm on her is a hostile witness to the State. Cleveland Heights v. Reed. (Oct. 12, 1995), Cuyahoga App. No. 67714.
Here, the trial court found that Anna was being uncooperative while the State was questioning her. Anna was not answering questions posed by the State; rather, she was claiming that her statement to the police was untrue and interjecting allegations of misconduct by the police. Before trial, she had made numerous attempts to have the charges against Smith dropped. Thus, we find that the trial court's decision to declare Anna hostile was well within its discretion. Therefore, it cannot constitute plain error.
Next, we review Smith's argument that the trial court erroneously allowed the State to treat Julie as a hostile witness. Smith objected to a single question by the State, concerning the argument that led to Smith's arrest:
 Q. Did your mom tell you about finding your father and Mrs. Tharp together over at Johnson Street when she had just been over there?
Smith did not state the specific ground for his objection as required by Evid.R. 103(A)(1). The trial court overruled the objection and stated: "he's comparing the two statements." We find that the trial court's comment indicated that it was ruling on a hearsay objection because Julie's testimony about Anna's statement was not offered for the truth of the matter asserted; instead, it was offered to compare Julie and Anna's statements to police. Smith did not object further to the State's mode of questioning. Thus, we find that Smith made no objection to the State asking leading questions of Julie, and we review the State's mode of questioning pursuant to Evid.R. 611 for plain error.
Once she took the stand, Julie immediately recanted her statements to police and to Kincaid, to whom she went to get help immediately after the incident with her father. In response, the State asked her to identify the portions of her statement to police that were true by reading each sentence to her and asking her if that statement were true. Smith implies in his argument that these questions were leading and that by asking these questions the State was impermissibly treating Julie as a hostile witness.
Even assuming arguendo that the State's mode of questioning was error, we cannot find that but for the error, the outcome of the trial would have been different. Thus, we cannot find that the State's questions amounted to plain error.
 B.
We next consider whether the trial court erred by questioning Anna and Julie. Smith argues that the trial court appeared to be an advocate for the State when it questioned them. We again note that Smith failed to object to this alleged error by the trial court; therefore, he has waived all but plain error. Lott.
Evid.R. 614(B) allows a court to "interrogate witnesses, in an impartial manner, whether called by itself or by a party." We review a trial court's interrogation of witnesses for an abuse of discretion.State v. Davis (1992), 79 Ohio App.3d 450, 454. In Davis, we stated:
 During a trial, the judge may, in the interest of justice, act impartially in developing facts germane to an issue of facts to be determined by the jury. * * * The court, in questioning a witness pursuant to Evid.R. 614(B) may not indicate by its intensity, tenor, range and persistence the court's opinion of a witness's credibility or the sufficiency of the testimony.
Davis, at 454.
We first review the trial court's questioning of Anna. During the State's questioning of Anna, her answer to a question prompted the state to ask her if she was being facetious. The trial court then asked questions to clarify Anna's testimony. When it became apparent that Anna had indeed admitted during her testimony that she had encouraged her daughter to lie to the police, the trial court excused the jury and advised Anna of her constitutional right to refuse to incriminate herself.
We cannot find that the trial court's conduct was plain error. It appears from the record that the court impartially attempted to clarify a witness's statement and in doing so realized that she was admitting to potentially illegal actions. The trial court exercised sound discretion in excusing the jury and advising the witness of her right to refuse to incriminate herself. Even assuming that the trial court's actions were erroneous, we cannot find that but for them the outcome of the trial court would have been different.
We next review the trial court's questioning of Julie. During the State's examination of Julie, the trial court interrupted and repeatedly tried to get Julie to repeat the conversation she had with her mother in their van on the way to the police station. Smith made no objection, so he has waived all but plain error. Lott.
Here, the trial court acted impartially in developing facts, i.e., Julie and Anna's conversation in their van on the way to the police station, germane to an issue of fact, i.e., whether Anna and Julie fabricated their statements to police. Even if we were to assume that the trial court's questions were erroneous, we cannot find that but for the questions, the outcome of the trial would have been different. Thus, we find no plain error.
We finally address Smith's arguments in support of his fourth assignment of error that the trial court erred in questioning Kincaid and Sergeant Barr in order to determine if statements made to them were excited utterances pursuant to Evid.R. 803(2). Again, because Smith failed to object to the trial court's questioning, he has waived all but plain error. The trial court ultimately had to decide whether the excited utterance hearsay exception applied. The trial court acted impartially in developing facts germane to the issue of whether statements made to Kincaid and Sergeant Barr were excited utterances. We cannot find that asking questions to enable the trial court to make a correct ruling amounts to plain error.
 C.
We find that the trial court did not commit plain error by questioning Anna, Julie, Kincaid, or Sergeant Barr. Therefore we overrule Smith's second, third assignments of error and part of his fourth assignment of error.
 IV.
In the remaining part of Smith's fourth assignment of error, he argues that the trial court erred in finding over his objections that statements made by Julie to Kincaid and statements made by Anna to Sergeant Barr were excited utterances. He asserts that in both instances, too much time had passed between the event and the statements.
We review a trial court's decision on whether a declaration is admissible as an excited utterance for abuse of discretion. State v.Taylor (1993), 66 Ohio St.3d 295, 305, citing Potter v. Baker (1955),162 Ohio St. 488.
Evid.R. 803 provides for exceptions to the exclusion of hearsay. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" and is not excluded by the hearsay rule. Evid.R. 803(2). "There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be the result of reflective thought. Therefore the amount of time between the statement and the event is relevant but not dispositive of the question." Taylor, 66 Ohio St.3d 303.
Smith first argues that the trial court erred in overruling his objection to Kincaid's testimony about statements made by Julie on the night of the incident at issue.
Kincaid testified that Julie ran into the carry-out where she was working. According to Kincaid, Julie was "really upset," crying, and holding her stomach.
We find that the trial court did not abuse its discretion in finding Julie's statements to Kincaid excited utterances. It was not unreasonable, unconscionable, or arbitrary for the trial court to conclude from Kincaid's testimony that Julie was under the stress of the incident with her father when she made the statements.
Smith next argues that the trial court erred in overruling his objection to testimony by Sergeant Barr about statements made to him by Anna. He testified that Anna seemed fearful and under the immediate stress of the events about which she was telling him.
We find that the trial court did not abuse its discretion in finding that Anna's statements to Sergeant Barr were excited utterances. It was not unreasonable, unconscionable, or arbitrary for the trial court to conclude from Sergeant Barr's testimony that Anna was under the stress of the incident with her husband when she made the statements.
 V.
In his fifth assignment of error, Smith argues that the trial court erred in permitting the State to impeach the credibility of their own witnesses with prior inconsistent statements in violation of Evid.R. 607. He asserts that the State was not surprised by the witnesses' testimony.
During the State's direct examination of Anna at trial, in response to her assertion that she lied to the police when she filled out a written statement, the State read her statement to her one sentence at a time and asked her if each sentence was true. She answered yes to almost everything but her prior statements concerning physical violence.
Smith objected only once to the use of Anna's statement to police in this manner. In response, the trial court replied that "in these circumstances," the State was permitted to impeach its own witness with her prior inconsistent statements. Neither party requested clarification by the trial court, and Smith made no further objections to the state's continued use of Anna's prior statement to police. Smith did not object at all to the State's similar questioning of Julie. Thus, we review the State's use of Julie's statements to police only for plain error, but review the merits of the State's use of Anna's prior inconsistent statements.
Evid.R. 607 limits impeachment of a party's own witness with a prior inconsistent statement. It provides:
The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. * * *
The existence of "surprise" concerning prior inconsistent statements is a decision within the sound discretion of the trial court. State v.Diehl (1981) 67 Ohio St.2d 389, 391; State v. Reed (1981)85 Ohio St.2d 117. Surprise exists if the witness's trial testimony is "materially inconsistent" with a prior statement, and counsel lacked an "express forewarning" from the witness of his or her intent to recant or repudiate the prior statement. State v. Wisebaker (Aug. 8, 1996), Pike App. No. 96CA567, citing Reed at 125; State v. Blair (1986)34 Ohio App.3d 6. A trial court does not abuse its discretion in finding that the prosecution was surprised when it was aware of a possibility that its witness may change his story but there is no express notice by the witness that he "would wholly deny his prior statement to the police officers", by the witnesses' testimony differing from his prior statement to police. State v. Lewis (1991), 75 Ohio App.3d 689, 696.
If a witness's testimony is inconsistent with the prior statements and also contradicts, denies, or harms the party's trial position, there is affirmative damage for purposes of Evid.R. 607. Wisebaker, citing Statev. Stearns (1982), 7 Ohio App.3d 11, 15.
Here, Anna wrote a letter to the prosecutor, which was filed in this case, in which she explained the circumstances of her argument with Smith the night of this incident. She stated, "I don't remember how everything happened but, no one got punched, I did pass out but I have been doing that lately, whenever I get upset. We were yelling at each other and pushing." Later, she stated that Smith is a great father who does not beat his children or her. She concluded her letter by stating that she and her daughter would testify in court that Smith "is a loving husband and father." She never indicated that what she told the police was untrue or that her daughter's statement was untrue and never indicated that she would testify that her statement to the police was not true.
Anna also wrote a letter to a person identified only as "Officer Pratter" and sent a copy to the prosecutor's office. In this letter, she made allegations against the police department, the local municipal judge and the "lady from domestic violence." She concluded by asking how "you can press charges against Ron if I didn't file them." At no point in the letter did she indicate that her statements to the police were untrue or that she intended to recant these statements at trial.
Thus, the prosecution should have been aware that there was a possibility that Anna might change her story but had not been put on notice that she "would wholly deny [her] prior statement to the police officers." Accordingly, we reject Smith's argument that the State could not have been surprised by Anna's testimony.
Additionally, we find no plain error in the State's use of Julie's prior inconsistent statement. The record does not contain any indication that Julie informed the State that she would recant her statement to police or that her prior statement was untrue. Therefore, we find that the trial court did not err in permitting the State to use Julie's prior inconsistent statement to impeach her.
Accordingly, we overrule Smith's fifth assignment of error.
 VI.
In his sixth assignment of error, Smith argues that the trial court erred in admitting the written statements of Anna and Julie over the objection of his trial counsel. He argues that the trial court erred in admitting the statements because when a witness admits to making a prior inconsistent statement, extrinsic evidence of such statement is not admissible.
Smith is correct that when a witness admits to making a prior inconsistent statement, extrinsic evidence of such statement is not admissible. See State v. Theuring (1988), 46 Ohio App.3d 152; State v.Johnson (1983), 10 Ohio App.3d 14.
A trial court's error is harmless if the error does not prejudice the party complaining about it. See, Crim.R. 52. The appellant has the burden to establish that any error is prejudicial. State v. Sibert (1994),98 Ohio App.3d 412.
Here, we find that any error that occurred in the admission of the statements was harmless. Smith waived any error in the state reading Anna and Julie's statements; thus, the jury had already heard the contents of the statements when the written statements were admitted. The contents of the "inconsistent" parts of the statements were corroborated by Anna and Julie's excited utterances that Smith had physically assaulted them. Moreover, Smith has failed to even allege prejudice. Accordingly, we overrule his sixth assignment of error.
 VII.
In his seventh assignment of error, Smith argues that the trial court erred when it interrupted his testimony and made statements that could have appeared to question his honesty. Smith did not object to the trial court's questions, therefore he has waived all but plain error.
Specifically, Smith finds fault with two statements of the trial court. First Smith complains that the trial court should not have interrupted his counsel. Second, Smith complains that the trial court should not have instructed him on answering questions by his counsel. During his testimony, Smith began explaining the underlying facts of a criminal trespass charge brought against him, which led to a civil case that was the alleged cause of the argument between Smith and his wife that led to the altercation at issue at trial. Upon objection by the State, the trial court attempted to determine the relevancy of Smith's testimony concerning the criminal trespass charge and gave Smith some "leeway" to examine the underlying facts. After Smith testified to the prosecutor's role in the situation underlying the criminal trespass charge, the trial court stated:
All the defense claims they want to do with this just say, well, we were arguing about the stress of this case that we had pending. Well, do they need to bring up specific details of the process is my point.
* * *
All right, go ahead and finish that part and move on.
* * *
 I'm giving you the latitude, I just want you to speed it up.
After even more testimony on this issue, the following exchange took place:
 THE COURT: Excuse me, I apologize, but it is important, sir, that you respond to the questions that are directed to you by your counsel.
[SMITH:] Okay.
 THE COURT: I realize that you have so much story you want to tell, I understand that, but how we proceed here is that you must respond to the questions that are directed to you, okay.
Again, Smith failed to object to the trial court's statements and questions and has waived all but plain error. Lott.
Evid.R. 611 states:
 Control by Court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
We review a trial court's decisions on Evid.R. 611(A) matters for an abuse of discretion. See State v. Scott (Mar. 15, 1999), Scioto App. No. 98CA2591; State v. Williams (May 18, 1998), Highland App. No. 97CA928.
Evid. R. 611 allows the trial court to prod witnesses and trial counsel to move the case along. Pool v. Wade (1996) 115 Ohio App.3d 449, 460. A trial court may admonish a criminal defendant to simply answer questions put to him, because such comments insure that the answers remain within the parameters of the Rules of Evidence. State v. Pavinich (June 17, 1998), Summit App. No. 18763. Thus, we find that the behavior of the trial court was well within its discretionary authority pursuant to Evid.R. 611. Even if we were to assume arguendo that the trial court's statements were erroneous, we cannot find that but for the comments, the result of the trial would have been different. Accordingly, we overrule his seventh assignment of error.
 VII.
In his eighth assignment of error, Smith argues that the trial court erred in instructing the jury. These instructions include the duty of law enforcement officials, court personnel, and court officials to proceed in cases where they believe a crime has been committed. Smith argues that these instructions led the jury to believe that the court, its personnel and officials were prosecuting the case because they believed that Smith was guilty. The instructions at issue are:
Law enforcement officers and officers of the court have a sworn duty to proceed in cases where there is probable cause to believe that a crime has been committed. Probable cause is a long way from reasonable doubt. But where they believe a crime has been committed they have a duty to proceed whether the victim is under 18 years of age or whether the victim is over 18 years of age. To proceed with a charge because it is a duty of the state and law enforcement officers and court officials to see that that charge is properly processed.
It is your duty as triers of fact to determine whether or not the evidence rises to the level of proof beyond a reasonable doubt. The mere fact that the Defendant has been charged with two counts of domestic violence is not in and of itself reasonable basis to believe that you should conclude that he has committed the crime. That must be established based on the evidence which you have now seen and heard today.
But it is a matter of law, the responsibility that law enforcement officers and court personnel to proceed with the charge where they in good faith believe a crime has been committed and there is probable cause to believe that the crime has been committed, whether or not that risesto the level of beyond a reasonable doubt is your decision ladies andgentlemen. * * *. [Emphasis added.]
Smith failed to object to the instructions to the jury and has waived all but plain error. Lott.
Viewing the instructions to the jury as a whole, we cannot find that but for the above instructions, the outcome of the trial would have been different. The trial judge specifically instructed the jury to "completely disregard" anything he may have said that the jury may consider to be an indication of his views on any issue. The instructions about which Smith complains clearly indicate that the jury is to determine Smith's guilt or innocence beyond a reasonable doubt. Thus, we overrule Smith's eighth assignment of error.
 IX.
We pause to address Smith's argument that appears in many of his assignments of error that he did not receive a fair trial because the trial judge was biased against him.
A criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law. See Rose v. Clark (1986),478 U.S. 570, 577; Tumey v. Ohio (1927), 273 U.S. 510, 534. Judicial bias is "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." State ex rel. Pratt v. Weygandt (1956),164 Ohio St. 463, paragraph four of the syllabus; see, also, ClevelandBar Assn. v. Cleary (2001), 93 Ohio St.3d 191, 201.
We note that Smith failed to use the procedures described in R.C.2701.03, which allows a party to file an affidavit of bias and prejudice with the Ohio Supreme Court seeking disqualification of a biased judge.
We cannot find that Smith was denied a fair trial. The trial court exerted tight control over the majority of the proceedings, including questioning by both attorneys, and took part in questioning almost all of the witnesses. Viewing the transcript as a whole, we see nothing to indicate that the trial court was biased against Smith. Accordingly, we reject all of Smith's arguments that he was denied a fair trial on the basis that the trial judge was biased.
 X.
In his ninth assignment of error, Smith argues that his trial counsel was ineffective in that he did not object to "certain matters that occurred during the trial." Specifically, he argues that his counsel should have objected to: (1)the events described in his first assignment of error; (2) the cross-examination by the trial court of his wife and daughter; (3) the jury instructions at issue in assignment of error eight; and (4) the trial court's failure to be impartial.
The Sixth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution require that defendants in all criminal proceedings have the assistance of counsel for their defense. Furthermore, the United States Supreme Court has generally interpreted this provision to mean that a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v. Washington
(1984), 466 U.S. 668, 687. In order to prove the ineffective assistance of counsel, a criminal defendant must show that (1) counsel's performance was in fact deficient, i.e., not reasonably competent, and (2) such deficiencies prejudiced the defense so as to deprive the defendant of a fair trial. Strickland at 687; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
In reviewing Smith's previous eight assignments of error, we have determined that Smith was not prejudiced by the trial court's handling of voir dire and also determined that the trial court: (1) acted impartially in questioning Anna and Julie; (2) clearly instructed the jury that the jury, not police or court officials, was to determine Smith's guilt beyond a reasonable doubt; (3) was not biased against Smith. Thus, we cannot find that Smith was prejudiced by his counsel's failure to object to the alleged errors by the trial court and therefore find that he received effective assistance of counsel. Accordingly, we overrule his ninth assignment of error.
 XI.
In sum, we overrule all of Smith's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hillsboro Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only.
[2] Miley's answer was transcribed as inaudible and Smith did notattempt to supplement the record with these answers in compliance withApp.R. 9.